Please call the next case. Pocket 4-13-0-1-1-9-WC Workers' Compensation Commission Appellant vs. Workers' Compensation Commission Jennifer T. Appleby That's tomorrow morning's next case. Let's move quickly to this call. What are tomorrow's cases? Are you fully prepared? I don't know how long I'm going to mess with that case. 5-13-0-1-8-6-WC Steve Anderson Workers' Compensation Commission Special Construction Company Appellate Thank you. Counsel, you may proceed. May it please the court, Mr. Carr, my name is Tom Schooley. I represent Petitioner Steve Anderson in this Workers' Compensation Appeal. At this arbitration, every issue was in dispute except employer-employee relationship. Steve Anderson was the only live witness to testify. And after he testified, no evidence was submitted. Arbitrator Lee, as well as the Commission, affirming, basically denied benefits and said the case turned on causal connection. And the basis for it turning on causal connection is twofold. One, they told us that Mr. Anderson did not connect the dots, and that he did not know that his shoulder condition was caused by his work-related accident. And I submit to you that when you look at this record as a whole, that that does not, is not supported by the manifesto. The evidence to that, an opposite conclusion, is clearly apparent. What did Wright and Rendy both say? Wright and Rendy agreed that his overhead chain-point work on July 27th could have aggravated a pre-existing shoulder condition and caused it to become symptomatic. They both said it. They both said it. I don't disagree with that. Is there anyone who says it didn't? Well, Rendy on direct examination says it did, but on cross-examination... He said it could have aggravated a pre-existing condition and made it symptomatic. And Dr. Rendy said, yes, I'm familiar with what a chain-fall is. And when I was a kid, I worked with cars, I used a chain-fall to lift an engine out of an automobile, so I know that it takes several pulls to lift something a quarter inch. It takes up one full pull. And here, in this particular case, Mr. Anderson was lifting a guillotine damper that weighed in excess of 2,000 pounds, 15 feet. So several hundreds is not in excess of 1,000 pounds per arm to get these dampers up to this day. Did he use chain-falls prior to July 9th? There's no evidence in this record that he did. There is evidence in this record, John, that he was working full-time as a construction boilermaker, doing his duties as a boilermaker, and he testified to that in the record. He did have one prior episode of a shoulder injury or shoulder symptoms. That being on June 11th, he was off work two days. But his testimony is that he thereafter continued working as a boilermaker, performing the heavy duties of a construction boilermaker up to and including July 27th. And is it Dr. Rend or Rendy? Rendy. Dr. Rendy indicated that that June 11th visit where he complained of left posterior shoulder pain was consistent with what was later found during surgery, right, the rotator cuff pathology? I would say based upon the records that he had before him. But he did not have a complete set of Dr. Mitchell's records in front of him. And I think that that's one of the fallacies and shortfalls in Dr. Rendy's opinion in that he only had records from that June 11th visit up to and past the date of accident. But there's other records for prior to that year where Mr. Anderson goes to Dr. Mitchell and he has no shoulder complaints whatsoever. And I think one of the assumptions that Dr. Rendy makes is that Anderson's having ongoing problems with his shoulder up to July 27th, the date that he was injured. Well, the difficulty I have with this is they find that your client failed to prove that he was injured out of the course of his appointment. Is that not the case? And they decided on that? Well, again, the basis, if you look at the arbitrator's decision, the first basis is that Anderson did not know what caused his shoulder problems until he went to Dr. Wright on 10-26 and gave a good history. And his testimony is that when he came back from his vacation a day and a half after this July 27th, he went to his foreman, Johnny Johnson, and he tells his foreman, hey, I went to the doctor yesterday, Dr. Mitchell, on August 11th, and I told him the reason I went there is because my shoulder still bothered me from when I was using the chainsaw. Well, you must understand my question. Arbitrator denied the benefits based upon a finding that the claimant's injury was not causally related to his employment. That's why he denied the benefits unless I misread his opinion. His decision. And his reason for that is the claimant alleged that he suffered on July 27th an injury where his medical records demonstrated he had an ongoing shoulder pain for three to four weeks before that date. And it was not until October 27th that he gave a history of a specific injury. He discounted Wright's opinion because he was unaware of the claimant's shoulder pain dating back to 2009. And he finds that Rendy's opinion was more credible. But is that even relevant? I mean, if we can see that the guy was asymptomatic before July the 27th and he became symptomatic after, then isn't the real issue supposed to be nature and extent? It's not supposed to be causation. I would agree 100% with that statement. To close that door, I also asked of Dr. Mitchell to prepare, and it's on page 86 of the transcript, Dr. Mitchell's letter, to clarify that he only had symptoms on June 11th and none thereafter, even though he went to Dr. Mitchell for other reasons. But he was doing fine after that, and he had no symptoms leading up to July 27th. That is my point, and that is the basis upon which I think this arbitrator and commissioner's decision is wrong, because they are assuming that he had ongoing problems up to July 27th. Well, even assuming he did have ongoing problems, if they were made worse by what happened on July the 27th, you've got a nature and extent question, but you don't have a causation question. Right, and then I listed in on cross-examination from Dr. Rendy that, yes, this sort of activity, because he was familiar with chain falls, could aggravate a pre-existing condition. And Dr. Wright, the operating physician, gives us both opinions. That's either a direct result, or it's an aggravation of the pre-existing condition. I imagine Mr. Carr is going to get up and say that Dr. Wright didn't know, of any previous problems, I submit to you that there are none. I mean, yes, did he have complaints six, seven weeks before? Yes. But for two days, does that mean he's got an ongoing problem? No. We all, and I'm sure that you all have had low-grade sprain cases, where we have an aggravation of degenerative disc disease that causes symptoms. Just because I'm 57 years old, if I would have a back x-ray, I'm sure that I would have those types of findings. Does that mean I have back problems? No. But most doctors will say that in this sort of trauma, they can make an asymptomatic case of degenerative disc disease symptomatic. That's what we're dealing with here. Was Dr. Wright ever asked, I mean, Dr. Wright's your client's doctor? Yeah. And so has Dr. Wright ever asked, what is the most likely cause of these problems? Or did the chain fall incident more likely than not aggravate this? Because what it turns out, what I see in the briefs and in the decisions here, is testimony that it could have caused the injury, could have caused an aggravation. So it's not as strong as what I was initially asking. Yeah. And your Honor, this is one of those cases where you have a false positive on an MRI, where an MRI shows a tear in the rotator cuff, where when the operating physician gets in there, there actually is not a tear. But there are these impingement syndrome diagnoses, and he goes in and cleans the shoulder. So that's why, whenever I depose Dr. Wright, I ask the questions in both fashions. Directly, is there a direct causal connection? Or in the alternative, do you find an aggravation of a preexisting condition in light of what you found when you visually saw that he didn't have a tear, but he did have impingement syndrome? Yeah. Did Dr. Wright ever indicate, in stronger terms than could have caused these problems, did he ever say that this use of chain falls most likely resulted in his problems, regardless of the pathology that was diagnosed? Yeah. Other than what I've told you, Your Honor, I don't know off the top of my head if you remember this testimony. But I know there is a causation testimony. I would respectfully state that these decisions are not supported by the manifestment of the evidence. Thank you. Thank you, Counsel. Counsel, you may respond. May it please the Honorable Court, Mr. Schooley, my name is Michael Carr. I represent the employer and the respondent below, in this case, Bechtel Construction Company. Contrary to Mr. Schooley's assertions in his brief and here today, the employer would submit that it is not at all clear that Mr. Anderson's shoulder problems began with the use of the chain fall while working for the employer on July 27, 2009. Well, therein lies the rub. Does it have to begin? What about the aggravation of the preexisting injury theory, which, as you know, in your experience, would be compensable? The cause doesn't have to be the sole or even the primary cause. If, in fact, the evidence established that this activity aggravated a preexisting condition, would the claimant not be able to recover under that theory? I would agree with you that if he had aggravated a preexisting condition on July 27, 2009, then we're dealing with a compensable injury. But I don't think that's what happened here. Well, what did Wright and Remney? Didn't they agree that this didn't result in an aggravation of a preexisting condition? Didn't they say that? I don't know that that's what Dr. Wright said because he didn't know about any preexisting condition. He didn't have any of the prior medical records. As far as he knew... No, but he did talk about a preexisting condition. He did talk about a preexisting condition. He said that the claimant's condition could have been caused by the chain pulling motion he described, or he also agreed the chain pulling could have aggravated a preexisting shoulder condition. He didn't know if he had one, but he said it could aggravate it. And the problem that I'm having with it is the claimant testified that after the June 11, 2009, treatment by Mitchell, he didn't have any further problems with his shoulder. And that the December 2008 automobile accident, his shoulder wasn't even injured at all. And there's no contrary evidence to that. So if you accept the fact that he was asymptomatic before July the 27th, then how could this be decided on causation as opposed to nature and extent? But that is asking you to accept that he was asymptomatic before July 27, 2009. What evidence is there that he wasn't? What evidence is there that he was other than the petitioner's own testimony? Wait a minute. Nobody found him not credible. He was never found not credible. They seem to have decided this case on the notion that if he failed to prove that he wasn't actually, the injury wasn't actually caused by the event of July the 27th that he couldn't recover. In combination with Dr. Rendy's testimony that he did not aggravate a preexisting condition in an accident that the petitioner alleged occurred on July 27, 2009. If it was Dr. Rendy's testimony that while he agreed and conceded that lifting a chain fall could aggravate a preexisting condition, it was that case only if he didn't have prior symptoms, which Mr. Anderson did. No, he didn't have any prior symptoms, according to him, from June the 11th all the way to the event. But he did have prior symptoms. Your Honor, he did have prior symptoms that required him to miss two days from work and go see Dr. Mitchell and take pain medications. It was June the 11th, was it not? It was, Your Honor. So what happened between June the 11th and the date of his injury? How far was it apart? About a month and a half. He said no problems. But assume he had a prior injury. Why doesn't he recover for aggravation of a preexisting injury? Because I'm not sure that he aggravated anything on July 27, 2009. And neither is he. And then the records don't show that he actually aggravated anything on that date. If we look at Dr. Wright's records, Your Honor, Dr. Wright, when Petitioner first goes to see him, is told, in contrary to what the Petitioner testified at trial, he's simply told, well, it's been aching for three to four weeks, worse with lifting this pulley at work. He doesn't say, boy, I had a specific accident and I specifically aggravated something on July 27, 2009. He doesn't even give a specific date. He doesn't describe a specific injury. And, in fact, he denies even having a specific accident or injury to Dr. Mitchell. What did he see Dr. Mitchell for for those four visits that, I mean, in the briefing, those four visits are referenced because pain, shoulder is documented in the problem list. But then there's a later letter by Dr. Mitchell saying, well, that's not necessarily what he was complaining about on that date, but it's just a carryover from the initial visit. So what was the reason for the visit on each of those four visits? Well, as you believe the Petitioner's testimony and what Dr. Wright wrote, it had nothing absolutely to do with his left shoulder. What was it? I don't know specifically. I'd have to look at those notes. But I believe it was just general health problems. And in looking at that, I note that later on, as he's seeing Dr. Mitchell, he is originally noted to improve. And then there's one visit after July 27, 2009, where they talk about cardiovascular problems and the left shoulder isn't even mentioned at all. And then his shoulder worsens again. He reports to Dr. Mitchell his shoulder worsening again with use at home and work after that visit date. Wait a minute. You know, I'm going to read you a quote. All right. I'm going to read you the quote from Mitchell's office note of August 11, 2009, which was after he came back from his vacation and went to see Mitchell. And it says, Missed work stated that 3-4 weeks left shoulder hurting, worst with hoisting some kind of chain at work. No specific episode of left shoulder trauma damage. Uses a pulley. Now, doesn't that sound like a man that reported that something happened to him when he was using that chain earlier? He testified that on the date of this event, where he claims that he actually aggravated or hurt it, felt something in his arm like he pulled something. Didn't go to the doctor because he said he thought it would be okay. Went on vacation. Goes to see Mitchell immediately upon returning from vacation. It doesn't sound, with all respect, Your Honor, no, I would disagree, because he's talking about 3-4 weeks he's had pain in this left shoulder. He's seeing Dr. Mitchell only less than 2 weeks or about 2 weeks after this alleged injury. So he's telling Dr. Mitchell, boy, my shoulder was hurting before 7-27-09. And even though... Worse with hoisting some kind of chain is what Mitchell said. Worse. So worse is an aggravation, isn't it? Is it worse aggravating? Okay. Yes, worse is aggravating, Your Honor. So then we've got an issue of nature and extent. We don't have an issue of causation. I disagree, Your Honor. Why? Because it doesn't say it's a permanent aggravation. It could be a temporary aggravation. Well, that's nature and extent. That's not causation. But then we're going into the surgery and everything else, and what of that condition was caused by this aggravation? That's nature and extent. It's not causation. The commission never decided that. They blew this out on causation, saying that there was no causal relationship between the events of whatever it was, September or July, and injury to his shoulder. And what I'm suggesting to you is all the evidence in this case points to at least some aggravation of a preexisting injury. How much? No one knows yet because they haven't decided. And that's the difficulty I have with this thing. Even your expert testifies that the claimant's overhead chain pulling on July the 27th could have aggravated a preexisting shoulder condition and caused it to become symptomatic. That was his testimony across examination. Could be. Now, is his current condition of ill-being causally related to that? We don't know that yet because the commission never decided it. But how would the commission – I guess my response to that, Your Honor, is how would the commission reach that point if there's only one accident date but forth by the petitioner, 7-27-09? He puts forth 7-27-09, and we know what his condition is today. Now, there's going to be testimony as to whether his condition today was actually caused by that aggravation or if his present condition could not have been caused by that aggravation, the aggravation was something that would have dissipated no matter which. We don't know that. I mean, the problem – it occurs to me, and this is where I had difficulty with this case, is it occurs to me that they blew it out on a very, very preliminary issue that just – even your own expert doesn't agree with. That there is – that if it was aggravated in – it says in the very beginning, it was more when it was hoisting, that it's a nature and extent issue, it's not a causation issue. Unless there's some evidence in here, unless there's some evidence in here, that following the July the 27th event, his shoulder was absolutely no different than it was the day before. If there were evidence of that, then you got it. But I don't think there is, is there? I don't know how – other than his testimony, I don't know that there is any evidence that it is different. Because he was able to work before July 27, 2009, he was able to work after July 27, 2009. Simply being able to work doesn't mean that his shoulder was asymptomatic. Okay. And he's taking medications. I mean, he must be taking medications for something. Just because he says he's asymptomatic, I would submit that the medications are probably helping those symptoms somewhat in the period before July 27, 2009. And then he goes and tells Dr. Mitchell at the first visit it was hurting three to four weeks prior to seeing him. That puts it well before July 27, 2009. I would submit to you there is evidence that he was having symptoms prior to July 27, 2009, and that he was not asymptomatic. And even then, even though he goes and tells his supervisor, look, it was hurting worse when I was pulling this chain fall, and I think it dates back to that, that's not what he tells Dr. Mitchell. He doesn't tell, he just simply says, you know, the pain is worse when I'm pulling this chain fall, but he doesn't say that he had an accident. It's simply, you know, when I'm doing this, it hurts more. I would submit that's not exactly an aggravation under the Act. And even then, he gets better after July 27, 2009. How would you define an aggravation under the Act? I would say that you have a condition, and it hurts worse or requires more treatment following the accident date. Well, didn't he say it hurt worse following the chains? It hurt worse when he was doing the chains. It didn't say it hurt worse because he was doing the chains. You're saying it's a temporary aggravation that resolves itself when he stops doing it.  Is that what the Commission found? Did they find it was a temporary aggravation that resolved itself? No, they did not. They didn't decide it on that basis. The Commission decided that there was no causation in this case because the petitioner didn't prove, didn't meet his burden of proof with respect to that issue and relied on Dr. Wright and his testimony, which isn't as complete and as credible as that of Dr. Rendy. Mr. Tenney? Yeah, counsel. At page 13, if you're free. Yes, sir. I'm just reading. Quote, Further complicating this history is the fact the petitioner told Dr. Mitchell his pain had begun one to two weeks before the accident date he would later allege. Close quote. So that I'm clear, give me the date that you're saying that he told Dr. Mitchell his pain began. Well, I can't give you an exact date because he didn't use exact dates, Your Honor, but he saw Dr. Mitchell on August 11, 2009, at which point he said, It's been hurting me for three to four weeks. The July 27, 2009 accident date is two weeks. And he's saying, It's been hurting me for three to four weeks. So at the very least, we are looking at mid to early July. You know, medical records, what people tell doctors and what doctors write down, it's not always exactly accurate. I mean, he gives some estimate of something that happened two weeks before. Do you really think that holding to this means exactly that date? Well, I would submit that Dr. Mitchell's records don't have any specific date, don't tie anything to work. So maybe he was just relating it all back to the date he used the chainsaw. He said three to four, but it turned out it was two. It seemed like three to four to him. Then why didn't he ever tell Dr. Mitchell? About it. And, in fact, later on, Your Honor, when Dr. Mitchell recommends to Mr. Anderson, and I'm just going to finish this up, that he had an injury and he knows when it was and tried to report it the day after, that doesn't fit with the facts. And he's not even telling Mitchell. If Mitchell knew what the injury was before, why would Dr. Mitchell have to write? He knows what it was and knows when it happened. If Mitchell knew, if Mr. Anderson had told Dr. Mitchell, you know, I heard it lifting that chainsaw, why did Dr. Mitchell have to write that two months later? The employer respectfully requests that you affirm the decision of the commission and the circuit court in this matter. Thank you, Your Honors. Thank you, Counsel. Counsel, you may reply. Just very briefly, and I think Dr. Mitchell's records speak loudly here in that, specifically the records after June 11th before July 27th, and I think Justice Harris answered your question. There were some episodes of depression, so he's being treated with, to see Dr. Mitchell, of course, some depressive symptoms. But in those, there are no mentions of left shoulder problems or symptoms or having pain and so on. I mean, why would he say after July 27th to Dr. Mitchell that he's having shoulder problems, but he wouldn't say it before? He told Dr. Mitchell on June 11th when he had them, so I submit to you that he wasn't having any shoulder problems. Well, isn't it a matter of fact that Mitchell's records from June 20th, July 1st, and July 16th, July 22nd, do not mention any discussion of left shoulder pain? You're correct, Justice. It's just not there. There's no history of left shoulder pain in those records at all. And then I would go further to state that on eight different references after July 27th, specifically August 11th, the 17th, the 27th, the 2nd of September, the 9th, the 11th of September, the 15th, and the 21st, they all make reference to shoulder complaints and referring it back in his mind to the chain fall poisoning incident. It's almost to the point when he has the MRI on September 16th, he tells the radiologist who performs the MRI, left shoulder MRI pain for two months after pulling overhead. They're consistent with this testimony up to July 27th was the starting date. Also, Dr. Mitchell calls him on the 21st and says, Hey, Mr. Anderson, you need to start a workers' compensation claim. All consistent. Thank you for your time. Thank you, Counselor Bowles, for your argument. This matter will be taken under advisement. The court will stand in recess until tomorrow morning at 9 a.m.